UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JOANNE L. LYDON,

        Plaintiff,

    v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.
-----------------------------------------------------------X

**NOT FOR PUBLICATION**

MEMORANDUM & ORDER
05-CV-0881

GARAUFIS, United States District Judge.

Joannne L. Lydon ("Plaintiff") brings this action pursuant to sections 405(g) and

1383(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3). The Plaintiff challenges

Commissioner of Social Security Jo Anne B. Barnhart's ("Commissioner") final determination

denying her application for Social Security disability benefits. Specifically, the Plaintiff

contends that the ALJ failed to properly evaluate both the medical evidence and the Plaintiff's

credibility. Now before the court are the parties' cross-motions for judgment on the pleadings.

For the reasons set forth below, the defendant's motion is DENIED and the plaintiff's motion is

GRANTED to the extent that the case is remanded to the Social Security Administration for

further proceedings consistent with this opinion.

I.    **Background**

    A.    *Procedural History*

The Plaintiff filed an application for Social Security disability benefits on January 11,

2001, alleging that a back injury prevented her from working after February 1995. (Transcript of

the Record ("Tr.") at 187.) The Social Security Administration denied the application initially

on May 9, 2001. (Id. at 30-33.) After a hearing on August 5, 2002, Administrative Law Judge

1

("the ALJ") Seymour Fier determined that the Plaintiff was not eligible for disability benefits. (Id. at 17-27.)  This decision became final on January 5, 2005, when the Appeals Council denied the Plaintiff's request for review of the ALJ's decision.  (Id. at 3-5.)  This action to challenge the Commissioner's final decision was timely filed in accordance with 42 U.S.C. § 405(g).

B.      *The Plaintiff's Personal and Employment History*

The Plaintiff was born on September 20, 1956, and was 45 years old at the time of the hearing before the ALJ.  (Id. at 187.)  Ms. Lydon testified that she finished thirteen years of school.  (Id.)  In the fifteen years prior to her hearing, the Plaintiff had worked as a school bus driver and as a chauffeur.  (Id.)  She stated that the bus driver position required her to sit for a ten hour shift, and that the chauffeur job entailed delivering and unloading equipment weighing up to seventy pounds.  (Id. at 189, 196.)

C.      *The Plaintiff's Medical History*

On February 6, 1995, the Plaintiff slipped on ice while walking to her bus, and fell on her back.  (Id. at 91, 188.)  The following day, she went to the First Med Emergency Room, and was prescribed Naprosyn and Flexeril.  (Id. at 87, 91, 128.)  She consulted Dr. Nottingham, an orthopedist, who provided physical therapy, and referred her for an MRI, which David P. Gerstman, a radiologist, assessed as showing disk herniations at levels T12/L1 and L2-3, and disk degeneration at L4-5 and L5/S1.  (Id. at 91, 132.)  On August 25, 1995, she was examined by M. Chris Overby, a neurosurgeon, who also found "disk herniation at the T12-L1 level," and "degenerative disk disease at L2-3, L4-5 and L5-S1."  (Id. at 148-49.)  He found her strength, reflexes, sensation, and gait to all be normal, and did "not recommend any surgical intervention for her lower back pain, which is primarily mechanical."  (Id. at 149.)  However, he assessed that

2

her obesity merited an aggressive weight loss program, and recommended a cervical MRI to determine whether the pain in her upper neck was due to a herniated disk.  (Id.)

On July 24, 1996, Plaintiff sought medical care from Leo E. Batash, a specialist in physical medicine and rehabilitation.  In his initial consultation, he found the Plaintiff to be obese, with moderately impaired mobility, with the impression of "[t]horaco lumbar derangement with radiulopathy and disc herniation at T12-L1 and L2-L3 levels."  (Id. at 92.)  He assessed Plaintiff as totally disabled, and recommended physical therapy.  (Id. at 92.)  Dr. Batash's progress notes from July 1996 through April 2001 show that Dr. Batash examined Plaintiff on at least fourteen different occasions during this period.  (Id. at 95-107.)  Dr. Batash summed up her complaints during his examinations as "excruciating lower back pain that radiates to the groin bilaterally, associated with constant 'needle-like' sensation into the groin bilaterally."  (Tr. 88.)

On January 2, 1997, Salvatore Lenzo, an orthopedic surgeon hired by the state to examine Plaintiff found that Plaintiff "can flex to 90 degrees and extend to 10 degrees," with no "gross motor and/or sensory deficits."  (Id. at 158.)  He diagnosed her with "resolved mechanical low back pain," but found that she had "reached maximal medical improvement," that she had "no disability secondary to this injury," and that she "could return to work full duty."  (Id.)

William Kainzbauer, M.D. compared an MRI of the lumbar spine taken on July 19, 1999 with the 1995 MRI, and found "degenerative disc desiccation at L2-3, L4-5, and L5-S1," a "decrease in size of right posterolateral disc herniation at T12-L1," and "no significant change in appearance of mild posterior disc protrusion at L2-3."  (Id. at 94.)

On April 2, 2001, Kyung Seo, M.D.,[1] a state examiner affiliated with Diagnostic Health Services, examined Plaintiff.  Dr. Seo noted in his history of Plaintiff that she underwent an MRI and was diagnosed with a herniated disc, but observed that "[n]o official report is available." (Id. at 136.)  He assessed that she walked into the examination room with a "non-weight bearing" cane in her right hand, was able to stand from a sitting position and get onto and off of an examining table without difficulty, and had normal motor coordination.  (Id. at 136.)  Dr. Seo reported her complaints of pain that "is aching and occasionally sharp radiating down to both legs to both ankles with numbness of both legs.  She also complains of having spasm of the low back area."  (Id.)  He noted that due to the pain, "[d]aily activities are somewhat limited.  Most of the time she stays home and takes rest.  Most of the housework and shopping is done by her friend."  (Id.)  Dr. Seo diagnosed her with "low back derangement," and assessed "slightly limited" functionality because of back pain.[2]  (Id. at 137.)  On April 3, 2001, the following day, Edmond B. Balinberg, M.D. of Diagnostic Health Services examined a "radiographic examination of the lumbosacral spine," and assessed "mild degenerative spondylosis at the L2-L3 level."  (Id. at 138.)

On April 5, 2001, Richard Johnson, M.D., F.A.C.S., a neurosurgeon, reported Plaintiff's history since the February 1995 accident as follows:  "the pain in her low back has been

_____

[1] The examination form does not indicate Dr. Seo's specialty, but Defendant does not dispute Plaintiff's contention that Dr. Seo is a thoracic surgeon and not an orthopedist, as one might otherwise infer by the fact that the form states "orthopedics" beneath his name.  (Pl's Mem. Supp. Mot, at 12 n.33; Tr. at 136.)

[2] Specifically, he assessed: "Knee jerk is 2+ both sides.  Achilles tendon reflect 1+ both sides. Toe-to-toe walking was difficult due to pain of the low back area.  Heel-to-heel walking was possible.  Squatting was approximately 1/4.  Muscle strength of both legs is Grade 5/5."  (Tr. at 137.)

progressive. She progressively lost the feeling in both of her legs. She has been having frequent falls when her legs give out with loss of sensation . . . . She rates her pain presently a 9 out of 10." (Id. at 159.) He examined her 1999 MRI and found "degenerative discs at L2-3, L4-5 and L5-S1 as well as decreased right-sided posterior lateral disc herniation at T12-L1. No significant change is noted, except protrusion of L2-3. EMG results show evidence of left-sided L5 and bilateral S1 radiculopathy as well as residual right-sided L5 radiculopathy." (Id. at 160.) Upon a physical examination, he reported that:

> On examination, the patient has severe limitation of movement. She is morbidly obese. She is unable to ambulate on toes and heels. She requires a cane for assistance. She has difficulty lying flat and must have the knees flexed. Straight-leg-raising is 0 degrees on the left and 5 degrees on the right with pain in the back that radiates down the buttocks on the side unilateral to movement. She has point tenderness in the left paraspinal area. She has weakness in plantar and dorsiflexion of both extremities. She has absent ankle jerks bilaterally and 2+ at the knees. Sensation is grossly decreased in L4, L5 and S1 bilaterally.

(Id.) Dr. Johnson found that Plaintiff suffers "from chronic low back pain with bilateral radiculopathy." (Id.) He sought authorization for a new MRI of her thoracic and lumbar spine.

On April 17, 2001, Dr. Batash provided a narrative report, again describing Plaintiff as obsese with moderate mobility impairment. (Id. at 87.) He reported that Plaintiff told him that Dr. Overby "advised surgery for the lower back." (Id. at 86.) He maintained his initial impression that the February 1995 injury produced a number of injuries, including "[t]horaco-lumbar derangement with radiculopathy and disc herniation at T12-L1 and L2-L3." He found that her "thoraco-lumbar pain with spasm and functional restriction of motion by more than 20-25% of the normal" rendered her permanently disabled, and assessed that "future degenerative changes" were certain because of "the progressive deposition of premature arthritic lesions in the involved joints with the aging process." (Id. at 89.)

Alexander Alalonis, an orthopedist and a medical examiner, testified at the hearing before the ALJ that occurred on August 5, 2002. (Id. at 184, 205-25.) He stated that he did not believe that Plaintiff met the listing for disabled. (Id. at 208.) Dr. Alalonis made this assessment based upon a review of documents from Drs. Overby, Batash, Lenzo, and Johnson. (Id. at 205-8, 223.) From Dr. Overby's report he concluded that Plaintiff has no neurological problem and no radiculopathy, and that her strength, reflexes, sensation, and gait are normal. (Id. at 205.) Dr. Alalonis concluded from Dr. Batash's files that Plaintiff has no neurological abnormality and a normal gait, but that her mobility is moderately impaired. (Id. at 206.) He also reviewed Dr. Lenzo's report, which found "no gross-motor or sensory deficit; neurological, no pain." (Id.) Dr. Alalonis noted that Dr. Johnson's assessment was that Plaintiff is morbidly obese, with "grossly decreased sensation" in the lower back, but concludes that "[t]he findings are somewhat questionable here because they're not clear." (Id.) Dr. Alalonis examined the report from Dr. Seo, in which he found Plaintiff to have been walking with a cane that is "not weightbearing," normal reflexes, no sensory deficit, normal strength, but with slightly limited motion, and "mild, degenerative changes." Lastly, from the 1995 and 1999 MRI's, Dr. Alalonis concluded that Plaintiff had a "mild posterior disc protrusion, L2, 3, disc causes mild impression . . . no evidence of significant spinal stenosis." In summary, Dr. Alalonis concluded that aside from Dr. Johnson's findings, that "the reports indicate no really significant neurological deficit . . . ." (Id. at 207-8.)

On cross-examination by Plaintiff's counsel, Dr. Alalonis acknowledged that Dr. Batash was Plaintiff's treating physician, and that Dr. Batash's notes indicate that Plaintiff has diminished sensation and "quite significant" restriction of motion, which could indicate radiculopathy. (Id. at 211-15.) Dr. Alalonis also stated that he did not consult all of Dr. Batash's

notes in forming his conclusion as to whether Plaintiff met the listing for disabled, and that he based his conclusion that she was not disabled primarily on the report of Dr. Overby. (Id. at 211.)

        D.     *Non-Medical Evidence*

In the hearing, Plaintiff testified that in her legs she has "continuous pins and needle, like my legs are asleep and my groin gets almost like ice cold." (Id. at 189.) She also stated that she feels continuous pain radiating from the middle of her back to both of her legs. (Id. at 198.) Plaintiff complained that she cannot sleep for longer than three hours at a time, and that at night she often urinates in bed because she cannot rise from the bed quickly enough. (Id. at 191, 198.) She also complained of depression. (Id. at 201.) Plaintiff testified that she ceased taking prescription pain medication because it caused her menstrual cycle to dramatically accelerate. (Id. at 191.)

Plaintiff claims that she typically does not climb stairs, can only walk one to one-and-a-half blocks a day, cannot sit for longer than twenty to twenty-five minutes, and can only stand for ten minutes at a time. (Id. at 189, 191-92, 199.) Plaintiff testified that her roommate does the housekeeping and carries heavy purchases from the grocery store, and that Plaintiff can only cook as long as she can stand, about ten mintues. (Id. at 192.) Plaintiff claims that Dr. Batash prescribed a cane around 1999. (Id. at 196.) Plaintiff states that when she does not use the cane, she falls to the ground. (Id. at 197.) Plaintiff testified that her symptoms progressively worsened in the two and a half years before the hearing, and that she continues to see Dr. Johnson for physical and pain management therapy. (Id. at 189-99.)

Andrew Pasternak, a vocational expert, testified at the hearing that the occupational listing of bus drivers constitutes a "medium level of physical exertion," but that he would

describe Plaintiff's work as a school bus driver as light.  (Id. at 226.)  Pasternak also stated that

her job as a delivery driver was "a medium job."  (Id.)  He further stated that he thought that

Plaintiff could engage in the type of light work that she performed as a school bus driver.  (Id. at

228.)

## II.    Discussion

### A.    Standard of Review

A district court may set aside the Commissioner's determination that a claimant is not

disabled only if the factual findings are not supported by substantial evidence or if the decision is

based on legal error.  42 U.S.C. § 405(g); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).  A

reviewing court should verify that a claimant had a "full hearing under the Secretary's

regulations and in accordance with the beneficent purposes of the Act."  Cruz v. Sullivan, 912

F.2d 8, 11 (2d Cir. 1990) (quoting Gold v. Sec'y of Health, Educ. and Welfare, 463 F.2d 38, 43

(2d Cir. 1972)).

A full hearing includes a well-developed medical record.  Because of the non-adversarial

nature of a benefits hearing, where the record is incomplete, an ALJ has an affirmative duty "to

develop a claimant's medical history even when the claimant is represented by counsel . . . ."

Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (citing Perez v. Chater, 77 F.3d 41, 47 (2d Cir.

1996)).  Further, in evaluating medical evidence, an ALJ must give good reasons for the weight

the ALJ assigns to the opinions of a claimant's treating source.  20 C.F.R. § 404.1527(d)(2); see

Rosa,168 F.3d at 79 (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).

*B.      The ALJ's Decision*

To receive benefits, a claimant must be "disabled" within the meaning of the Social

Security Act. Shaw, 221 F.3d at 131. Agency rules require the Commissioner to apply a five-

step sequential analysis to evaluate whether claimant is disabled. See 20 C.F.R. § 404.1520.

1.      The Commissioner considers whether the claimant is currently engaged in
        substantial gainful activity.

2.      If not, the Commissioner considers whether the claimant has a "severe
        impairment" which limits his or her mental or physical ability to do basic
        work activities.

3.      If the claimant has a "severe impairment," the Commissioner must ask
        whether, based solely on medical evidence, claimant has an impairment
        listed in Appendix 1 of the regulations. If the claimant has one of these
        enumerated impairments, the Commissioner will automatically consider
        him disabled, without considering vocational factors such as age,
        education, and work experience.

4.      If the impairment is not "listed" in the regulations, the Commissioner then
        asks whether, despite the claimant's severe impairment, he or she has
        residual functional capacity to perform his or her past work.

5.      If the claimant is unable to perform his or her past work, the
        Commissioner then determines whether there is other work which the
        claimant could perform. The Commissioner bears the burden of proof on
        this last step, while the claimant has the burden on the first four steps.

Shaw, 221 F.3d at 132 (citing DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998)).

The ALJ acknowledged this five-step analytical framework in his decision. (Tr. at 18.)

He found that the Plaintiff met the disability requirements of the first step because she was not

engaged in gainful activity, (id. at 19) and that Plaintiff has a severe impairment within the

meaning of 20 C.F.R. § 404.1521. (Id.) Specifically, the ALJ found that "claimant has chronic

back pain and radiculopathy," which "are severe and do impose more than a minimal restriction

of her ability to perform basic work related activities." (Id.) However, regarding step three, the

ALJ found that Plaintiff does not have "an impairment that meets the criteria of an impairment listed in Appendix 1 [of the regulations]." (Id.) Proceeding to step four, the ALJ concluded that Plaintiff has residual capacity to perform her past work, and under step five, that she has the ability to perform other forms of light work. (Id. at 22-23.)

The ALJ found that the Plaintiff's disability claim failed because she retained sufficient residual functional capacity "for the full range of light work." (Id. at 23.) In reaching this conclusion, the ALJ discounted the assessment provided by her treating physician Dr. Batash, who stated that Plaintiff is disabled, which the ALJ found "to be neither controlling nor persuasive." (Id. at 23) The ALJ wrote:

> Importantly, Dr. Batash's opinions are not supported by examination signs and findings, but appear to have been based solely on the claimant's subjective complaints, and Dr. Batash's opinions are inconsistent with the claimant's conservative medical treatment, her positive response to physical therapy and medication, as well as the opinions of other examining . . . and non-examining . . . physicians.

(Id. at 23.) The ALJ based his determination that Plaintiff could perform her past or other light work on the report from Dr. Seo "that the [Plaintiff] had low back derangement with only slight limitations for sitting, standing, bending, lifting and carrying heavy objects," and Dr. Lenzo's opinion "that she could return to full duty work." (Id.) From these reports, the ALJ concluded that Plaintiff could engage in "sitting six hours a day, standing and walking six hours a day, and being able to lift and carry 10 pounds frequently and 20 pounds occasionally," which the vocational expert testified constituted light work. (Id. at 24.) Having found that Plaintiff can engage in the full range of light work, he next considered whether Plaintiff could perform past relevant work, which is defined in 20 C.F.R. § 404.1565 as work performed in the past fifteen years prior to the disability that Plaintiff engaged in sufficient to learn how to perform the work,

and that constitutes substantial gainful activity. 20 C.F.R. § 404.1520(e). Although Plaintiff's prior job as a bus driver is classified as "medium exertional capacity," the ALJ concluded from Plaintiff's testimony that she did no lifting as a bus driver, and the vocational expert, Mr. Pasternak, that she could perform this work, and other light work, such as chauffeur and parking lot attendant. (Id. at 24.) In accordance with the five-step analysis, the ALJ found that because the Plaintiff retained sufficient capacity to continue her old work, or to adjust to new light work, she was not disabled within the meaning of the Social Security Act and thus not entitled to benefits. (Id. at 24).

The ALJ's determination was also based on his conclusion that the Plaintiff's complaints of pain, impaired range of motion, and diminished sensation were "not entirely credible, in light of the evidence in file." (Tr. at 23.) The ALJ found:

> The medical evidence does not support the claimant's allegations. The claimant uses a cane for assistance, but Dr. Seo reported that it was in her right hand and non-weight bearing. She alleges loss of feeling in both legs, however this has not been substantiated by objective medical findings. There are no EMG or nerve conduction studies to verify these allegations. As a matter of fact, all of the physicians, including her own neurologists have reported that motor and sensory examination of the lower extremities did not reveal any gross motor and/or sensory deficits. Muscle strength of her lower extremities has been consistently graded as 5/5. There is no muscle atrophy.

(Id. at 23.)

Having found that the Plaintiff's impairments did not prevent her from working in her prior position as a bus driver or in other comparable light positions, the ALJ concluded that the Plaintiff "was not under a disability as defined in the Social Security Act, at any time through the date of this decision." (Id. at 24.)

*C.*     *The Plaintiff's Claims*

*1.*     *The Treating Physician Rule*

The Plaintiff argues that the ALJ did not accord Dr. Batash's evaluations and opinion the proper weight that they were entitled as those of her "treating physician." (Pl's Mem. Supp. Mot. J., at 15-16.) Specifically, the Plaintiff contends that the ALJ improperly chose to credit the report of Dr. Seo, who saw the Plaintiff only once, did not examine the Plaintiff's MRI's, and does not have the appropriate specialty to assess Plaintiff's conditions. (Id. at 17-18.) Instead, Plaintiff urges, the ALJ should have credited the opinions of Dr. Batash, a rehabilitation specialist who "had seen the claimant frequently for a period of at least four years," and who "regulated [Plaintiff's] treatment, prescribed medication, referred her to and acknowledged the opinions of other specialists," and who was, therefore, her treating physician. (Id.) The government does not dispute that Dr. Batash was Plaintiff's treating physician, but urges that the ALJ properly credited Dr. Batash's clinical findings while rejecting his conclusion that Plaintiff was disabled, which is "an ultimate issue reserved for the ALJ." (Def.'s Reply Mem. Supp. J., at 4.)

The treating physician rule as articulated by the Second Circuit states that:

a treating physician's opinion on the subject of medical disability, i.e., diagnosis and nature and degree of impairment, is: (i) binding on the fact-finder unless contradicted by substantial evidence; and (ii) entitled to some extra weight because the treating physician is usually more familiar with a claimant's medical condition than are other physicians, although resolution of genuine conflicts between the opinion of the treating physician, with its extra weight, and any substantial evidence to the contrary remains the responsibility of the fact-finder.

Havas v. Bowen, 804 F.2d 783, 785 (2d Cir. 1986) (quoting Schisler v. Heckler, 787 F.2d 76, 81 (2d Cir. 1986)).

"The opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." Rosa, 168 F.3d at 78-79; 20 C.F.R. § 404.1527(d)(2). An ALJ is not bound to follow the assessment of the treating physician; however, an ALJ is required to provide "good reasons" to accord the opinion other than controlling weight. See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 416.927(d)(2). Further, if the ALJ decides that the treating physician's opinions are not to be given controlling weight, the ALJ must specify what "reduced weight to give them." Johnson v. Apfel, No. 97-CV-3442, 1998 U.S. Dist. LEXIS 9939, at *15 (E.D.N.Y. July 2, 1998). In reaching this decision, an ALJ must apply the factors set out in 20 C.F.R. § 404.1527(d)(2)-(6), including:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

Halloran, 362 F.3d at 32.

A court will not "hesitate to remand when the Commissioner . . . do[es] not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Id. at 33. Further, before rejecting a treating physician's diagnosis, an ALJ must first "attempt[] to fill any clear gaps in the administrative record." Rosa, 168 F.3d at 79. Thus, the ALJ has an affirmative duty to develop the administrative record. Id.; Perez, 77 F.3d at 47.

Here, the ALJ failed to apply the treating physician rule with adequate clarity and thoroughness. The ALJ acknowledged that Dr. Batash's assessment that Plaintiff was disabled is "a treating source's statement;" however, the ALJ did not assign controlling weight to Dr.

Batash's opinions, and his reasons for doing so are not stated with sufficient particularity to allow a meaningful review.

Principally, the ALJ failed to adequately address the issue of the length, frequency and nature of Dr. Batash's treatment of the Plaintiff. See 20 C.F.R. § 404.1527(d)(2)(i). While the ALJ noted that the Plaintiff was treated by Dr. Batash "on a steady basis" between July 24, 1996 and April 17, 2001 (Tr. at 20), the ALJ did not delve sufficiently into the nature of the treatment relationship to support his determination. In particular, the ALJ seemed to disregard the fact that Dr. Batash's assessment of Plaintiff draws from a plethora of medical evidence: on his treatment of Plaintiff's complaints of pain over a five year period, on the reports of Drs. Nottingham, Overby, and Weiner, and on the 1995 and 1999 MRI's. (Tr. at 87-89.) Dr. Batash's referrals, examinations, review of MRI's, and treatment may well have provided him with both a "unique perspective" and an important "longitudinal picture" for evaluating the Plaintiff's present condition. See 20 C.F.R. § 404.1527(d)(2). For example, Dr. Batash's diagnosis in 2001 that "[t]he likelihood of future degenerative changes is a certain and significant one," (Tr. at 89) is a significant finding that may have been based on his five-year treatment of Plaintiff, and suggests that Plaintiff's condition may have worsened since her examination by Dr. Lenzo in January 1997. See Havas, 804 F.2d at 786 (finding of "degenerative" condition suggests that claimant "might well have been more impaired" at the time of the hearing than during the physician's examination). At the very least, these issues should have been considered before the ALJ chose to credit Dr. Lenzo's evaluation, who only examined Plaintiff once, over Plaintiff's treating physician. See Mackey v. Barnhart, 306 F. Supp. 2d 337, 344 (E.D.N.Y. 2004) ("The opinion of a one-time consultative examiner is entitled to less weight than that of the treating doctors.")

Similarly, the ALJ's explanation of his consideration of the evidence in support of Dr. Batash's opinion was lacking.  See 20 C.F.R. § 404.1527(d)(2)(ii).  The ALJ's finding that Dr. Batash's opinions of Plaintiff's conditions "are inconsistent with the . . . opinions of other examining . . . and non examining . . . physicians," (Tr. at 23) is belied by the opinions of Dr. Johnson, who assessed Plaintiff as <u>more</u> impaired than Dr. Batash did.[3]  (<u>See id.</u> at 159-60.)  To the extent that the ALJ, in disregarding Dr. Johnson's assessment, relied solely on the opinion of the consultative physician Dr. Alalonis, who found Dr. Johnson's opinions to be "somewhat questionable," (Tr. at 206), such a ruling would contravene the Second Circuit's instruction that "the opinions of nonexamining medical personnel cannot in themselves constitute substantial evidence overriding the opinions of examining physicians."  <u>Havas v. Bowen</u>, 804 F.2d 783, 786 (2d Cir. 1986).  Moreover, other physicians' assessments support Dr. Batash's conclusion that Plaintiff is disabled.  Drs. Overby and Kainzbauer also found that Plaintiff had a herniated disc and degenerative disc disease.  As this court has previously held, an ALJ who asserts, without further explanation, that a physician's opinion is contradicted has not given good reasons for the weight assigned to that physician's opinion, and thus "cannot be said to have fulfilled his duty." <u>Sutherland v. Barnhart</u>, 322 F. Supp. 2d 282, 290-91 (E.D.N.Y. 2004).

Furthermore, the physicians whom the ALJ found assessed Plaintiff as less impaired than Dr. Batash concurred on Batash's underlying diagnoses.  Dr. Lenzo, whose opinion that Plaintiff

---

[3] The records submitted by Defendant appear to show that the ALJ sent a subpoena to Dr. Johnson's office for records regarding Plaintiff, but never sent a payment form as requested by the office.  (Tr. at 181-83.)  Dr. Johnsons's records are not in the official record, and appear not to have been considered in the ALJ's decision.  To the extent that the ALJ issued an opinion rejecting Dr. Johnson's opinions without obtaining Dr. Johnson's records, this was error.  <u>See</u> <u>Sutherland v. Barnhart</u>, 322 F. Supp. 282, 290 (E.D.N.Y. 2004) (Garaufis, J.); <u>Sobolewski v. Apfel</u>, 985 F. Supp. 300, 315 (E.D.N.Y. 1997); 20 C.F.R. § 404.1512)(d).

"could return to full work duty," was credited by the ALJ, agreed that Plaintiff had degenerative disc disease, and his examination in 1997 could not have taken into account the 1999 MRI or the medical opinions of the other examining doctors. To the extent that the ALJ credited one-time examining physician Dr. Lenzo's conclusion over Dr. Batash's, the ALJ provided no explanation as to why Dr. Lenzo's assessment was more persuasive. Dr. Seo also found that the Plaintiff has low back derangement and impaired functionality. (Tr. at 137.) While Dr. Seo's assessment of the Plaintiff's physical capabilities differed from Dr. Batash's, where two doctors are in general agreement concerning the nature of a patient's condition, it is insufficient to indicate that one doctor's findings contradict those of the other without specifically elaborating the nature of the contradictions.[4]

In deciding to reject Dr. Batash's evaluation, the ALJ also made no mention of the impact that Dr. Batash's expertise and specialization played in the decision-making process. The ALJ, however, was required to consider this factor under the regulations. See 20 C.F.R. § 416.927(d)(2).

The ALJ's findings that the treating physician's treatment assessment and opinions "are inconsistent with the claimant's conservative medical treatment, her positive response to physical therapy and medication," (Tr. at 23) are too vague to be reviewed by this court. Regarding the ALJ's suggestion that Plaintiff's lack of more aggressive treatment shows that she

_____

[4] The ALJ seems to have relied exclusively on Dr. Lenzo in finding Plaintiff not to have been disabled. If, however, the ALJ intended to credit Dr. Seo's assessment over Dr. Batash's opinions, the ALJ must explain why Dr. Seo's opinion is more persuasive, given that Dr. Seo was a one-time examiner, he did not review Plaintiff's MRI's, he has a less relevant medical specialty than Dr. Batash, he did not assess the impact of her pain or obesity on her impairment, and his assessment was found in Plaintiff's Physical Residual Functional Capacity Assessment to be entitled to no weight because it is not specific. (Tr. at 136-37, 145.)

is not disabled, the Second Circuit has held that it is error for an ALJ to find "that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment imposed." Shaw v. Chater, 221 F.3d 126, 134-35 (2d Cir. 2000). Furthermore, Plaintiff's testimony that her insurance company would not authorize surgery, (Tr. at 193) suggests that the Plaintiff's limited treatment was due to her limited financial resources, not her lack of need for more invasive treatment. See id. at 133 (rejecting ALJ's reasoning that a lack of treatment suggests lack of disability because "it was not unreasonable for [claimant] to discontinue those treatments, particularly in light of his testimony that he could not afford further medical care"); Garcia v. Barnhart, 01-Civ.-8300, 2003 U.S. Dist. LEXIS 159, at *25 (S.D.N.Y. Jan. 6, 2003) (rejecting ALJ's finding that claimant is not disabled because she did not obtain regular treatment without considering her limited resources, ability to travel, and success with the treatment as "contraven[ing] the purpose of the social security benefit system").

The ALJ's final two reasons for rejecting Dr. Batash's opinion that Plaintiff is disabled, the positive effects of medication and physical therapy on her, are not supported by substantial evidence. Plaintiff's undisputed testimony is that she does not take the medication prescribed to her because it radically alters her menstrual cycle. (Tr. at 191.) Regarding Dr. Batash's treatment of Plaintiff with physical therapy, the ALJ does not explain why he credited this treatment as improving Plaintiff's condition without crediting Dr. Batash's opinion that while physical therapy resulted in "general relief of the symptoms," she experienced "episodes of remission and exacerbation caused by various aggravations," (Tr. at 88), and faced "future degenerative changes . . . ." (Tr. at 29.)

The Government argues that substantial evidence supports the ALJ's rejection of Dr. Batash's opinions because Drs. Nottingham, Overby, Lenzo, and Seo all made findings that

contradicted Dr. Batash's finding of disability. (Def.'s Mem. Supp. Mot. J., at 17.) Whether or not this is the case, the ALJ did not adequately explain how Dr. Batash's opinions were not supported by the medical evidence. This court "may not accept appellate counsel's post hoc rationalizations for agency action." Snell, 177 F.3d at 134 (internal quotation omitted). Plaintiff is entitled to a discussion of Dr. Batash's opinions, and an assignment of weight to those opinions.

Although the ALJ clearly arrived at a decision not to accept Dr. Batash's evaluations and opinions, from the record it is simply unclear whether this determination involved the application of all of the considerations required by the regulations. If an ALJ's decision leaves reasonable doubt as to whether legal standards were correctly applied, an unacceptable risk exists that a claimant may be improperly deprived of a right to a correct determination. See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987). The appropriate remedy in such a situation is to remand the matter to the ALJ for further development and explanation of his findings. See id. at 987. It is not the place of a district court to attempt to read between the lines of the administrative record to infer the ALJ's reasoning from subtleties; rather, the ALJ should illuminate the reasoning underlying his or her decision. See Schaal, 134 F.3d 496 at 500.

On remand, the ALJ should leave no doubt as to his findings. The ALJ should explain the appropriate weight to afford Dr. Batash's opinions and the opinions of the other examining physicians, and state the facts that lead to this conclusion. If the ALJ decides not to assign controlling weight to Dr. Batash's opinion, the ALJ should clearly state good reasons for this finding in accordance with 20 C.F.R. § 404.1527(d)(2). If any relevant facts are unknown, the ALJ should investigate these facts and present them in his decision in accordance with his obligation to develop the record. 20 C.F.R. § 1512(d), (e).

2.    *The Plaintiff's Credibility*

The Plaintiff contends that the ALJ failed to properly evaluate her credibility because he failed to apply the proper standards in reaching his determination.  The ALJ found that Plaintiff's allegations regarding her impairments are "not totally credible for the reasons set forth in the body of the decision."  (Tr. at 25.)  To the extent that the ALJ did consider the Plaintiff's credibility in reaching a determination that she was not disabled, "[i]t is the function of the Commissioner, not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."  Aponte, 728 F.2d at 591 (alteration in original) (quotation omitted).  However, the ALJ must nonetheless make a determination of credibility under the standards set by the Social Security Administration and the law of this circuit.  Section 416.929(c)(3) of title 20 of the C.F.R., as interpreted in Social Security Ruling 96-7p, 1996 WL 374186 (S.S.A. 1996), requires an ALJ to evaluate a plaintiff's report of her symptoms through a two-step analysis.  First, "the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment[ ]--i.e., an impairment[ ] that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms."  1996 WL 374186 at *2; see also 20 C.F.R. § 416.929(b).  Second, "once an underlying physical or mental impairment[ ] that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."  Id.  Such an evaluation must include consideration of the credibility of the plaintiff's subjective reports of pain, which in turn requires that the ALJ "must consider" the following non-exclusive list of factors:

19

1.      The individual's daily activities;

2.      The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3.      Factors that precipitate and aggravate the symptoms;

4.      The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5.      Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6.      Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.      Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms

Id. at *2-3.  In reaching a determination regarding a plaintiff's credibility, an ALJ is also obligated to consider relevant statements from treating and consulting physicians and any observations noted by SSA employees during interviews.  Id. at *5.

Though the ALJ made passing reference to Social Security Ruling 96-7p in his decision, it is clear that he did not consider all of the relevant factors enumerated therein.  The ALJ found that Plaintiff has "chronic back pain and radiculopathy," and found her impairment to be "severe."  (Tr. at 22.)  The ALJ, however, did not specifically address whether the Plaintiff's radiculopathy and itself  "could reasonably be expected to produce" such "pain or other symptoms," which is the analysis demanded under the regulations.  See 1996 WL 374186 at *2.  The ALJ was obliged to consider whether these impairments could cause the pain the Plaintiff contends she experiences.  Moreover, the ALJ's flawed consideration of the Plaintiff's physical symptoms did not take full account of the record, in particular Dr. Batash's finding that disc

hermiation has encroached "upon the spinal nerve roots, causing excruciating pain and discomfort to the patient." (Tr. at 89.)

In the second step of the analysis, the ALJ's evaluation of the Plaintiff's subjective complaints of pain both overlooked significant facts in the record and failed to properly take into account relevant factors from the regulations. The ALJ described Plaintiff's complaints in the hearing that she "has no feelings in her legs," (Tr. at 21), and rejected this testimony as not "substantiated by objective medical findings," and contradicted by her physicians' findings that she has no gross sensory deficits and has regular muscle strength and size. (Tr. at 23.) The ALJ in his determination that her complaints of diminished sensation were not credible seems to have overlooked the Plaintiff's long-standing complaints of debilitating pain as distinct from her complaints of loss of sensation. Plaintiff testified that she feels constant pain from her lower back through to her legs (Tr. at 198), which is corroborated by five years of treatment notes by Dr. Batash, in which he recorded her substantially similar complaints of pain in every session. (Tr. at 95-107.) The ALJ, in rejecting her subjective complaints of pain, concluded that all of Plaintiff's examining and non-examining physicians other than Dr. Batash discredited Plaintiff's account of her pain. (Tr. at 23.) However, the ALJ seems to have ignored the facts that Dr. Nottingham prescribed various medicines for her pain (Tr. at 128) and that all examining doctors except Dr. Lenzo recorded Plaintiff's complaints of pain. (Tr. at 136 (Dr. Seo), 148 (Dr. Overby), 159 (Dr. Johnson).) Moreover, given that the ALJ found that Plaintiff suffers from "chronic back pain and radiculopathy," the ALJ seems to have found Dr. Batash's assessment of Plaintiff's complaints of pain stemming from her nerve root irritation credible, at least in part. If the ALJ has determined that Plaintiff's complaints of disabling pain are not credible because

they are not supported by substantial evidence, he "should explain why he is doing so."  Snell, 177 F.3d at 135.

In rejecting Plaintiff's complaints of pain, the ALJ also appeared to reject, without discussion, Plaintiff's testimony regarding her daily activities, which the ALJ was required to consider as the first factor in the analysis.   In stating that Plaintiff "does her own cooking," (Tr. at 22) the ALJ omitted that she can cook for no more than ten minutes, and that she cannot carry a "quart of milk."  (Tr. at 192.)  The Plaintiff also failed to discuss Plaintiff's testimony that she can sit for only twenty-five minutes.  (Tr. at 189.)   In finding that Plaintiff retains the residual functional capacity to perform the duties of a bus driver, the ALJ erred in failing to consider this testimony alongside the nature of the duties of Plaintiff's former position as a bus driver, and in particular its requirement that she sit for a prolonged period of time.[5]  See Sarchese v. Barnhart, No. 01 Civ. 2172, 2002 WL 1732802, at *8 (E.D.N.Y. July 19, 2002) (Gleeson, J.) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 643 (2d Cir.1983)) ("The Second Circuit has frequently rejected determinations that a person is not disabled based on minimal activities of daily life not engaged in 'for sustained periods comparable to those required to hold

---

[5]  I note for the record that a finding that a claimant can perform "light" work requires a finding that the claimant is able work in positions that "require[] a good deal of walking or standing, or when it involves sitting most of the time with some pushing an pulling of arm or leg controls." 20 C.F.R. 416.967(b).  Furthermore, a claimant is unable to perform any work if she exhibits an "inability to sit for long periods of time."  Id.  Courts interpret this requirement as requiring substantial evidence that a claimant can sit "about six hours of the workday."  Sobolewski v. Apfel, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).  While the ALJ cited Drs. Seo and Lenzo for the opinion that Plaintiff is able to return to work as a bus driver (Tr. at 23), neither physician found that she can sit for the requisite period of time, as required to support a finding of ability to return to the position.  Sobolewski, 985 F. Supp. at 309-10.  If on remand the ALJ feels that a residual functional capacity finding from Plaintiff's treating physician is necessary, the ALJ should obtain one sua sponte.  See Rosa, 168 F.3d at 79.

a sedentary job.'").  Thus, when the full record is considered, a much different picture of the Plaintiff's physical capabilities emerges.

The ALJ also neglected to discuss the fourth, fifth, and sixth factors, medication, treatment, and self-help for Plaintiff's pain.  Plaintiff testified that she cannot take the pain medication prescribed for her because of its effect on her menstrual cycle, and that with physical therapy, whether with a physician or on her own, "I feel maybe 10-, 12-percent better, and then it stops."  (Tr. at 191.)  This testimony, if credited, could lead the ALJ to the conclusion that medication and treatment are unable to relieve the Plaintiff's pain.

Lastly, the ALJ did not acknowledge Plaintiff's unblemished work record from 1974, when she was 18 years old, to her injury in 1995.  (Tr. at 54; see also Pl. Mem. Supp. Mot. J., at 22.)  A claimant's work record should be considered in evaluating the claimant's credibility.  Singletary v. Secretary, 623 F.2d 217, 219 (2d Cir. 1980).

On remand the ALJ should apply Social Security Ruling 96-7p meaningfully.  First, the ALJ should address whether the Plaintiff's medical impairment reasonably might be expected to give rise to the type of pain of which she complains.  Second, the ALJ should make a full examination of the Plaintiff's explanations regarding her ability to carry out daily activities, the efficacy of medication and treatment, and should also address other relevant factors provided in the regulations concerning the Plaintiff's credibility.

### D.     Remand or Award of Benefits

The Plaintiff requests that the Defendant's decision be reversed, and alternatively remanded for a new hearing and decision.  "When the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," reversal of the ALJ decision and remand solely for the calculation of benefits is appropriate.  Parker v.

<u>Harris</u>, 626 F.2d 225, 235 (2d Cir. 1980).  However, "when there are gaps in the administrative record or the ALJ has applied an improper legal standard," a court should remand the case to the Commissioner for the further development of the record.  <u>Id.</u>; <u>see</u> <u>also</u> <u>Soblewski</u>, 985 F. Supp. at 315 ("Where there are gaps in the administrative record, remand to the Commissioner for further development of the evidence is in order.")

As there are numerous areas that the ALJ failed to consider in reaching his decision, remand is the more appropriate remedy in this case.  Moreover, the medical record contains conflicting evidence, and "it is for the SSA, and not [a] court, to weigh the conflicting evidence in the record."  <u>Schaal v. Apfel</u>, 134 F.3d 496, 504 (2d Cir. 1998).  I thus deny Plaintiff's request for reversal and an award of benefits, and grant Plaintiff a remand for a new hearing and decision.

**II.      Conclusion**

For the foregoing reasons, the Commissioner's motion is DENIED and the Plaintiff's motion is GRANTED to the extent that this case is REMANDED to the Social Security Administration for further proceedings consistent with this opinion.

SO ORDERED.

Dated:  April 7, 2006                                              /s/ Nicholas Garaufis
            Brooklyn, NY                                          NICHOLAS G. GARAUFIS
                                                                             United States District Judge